# Order

Michigan Supreme Court
Lansing, Michigan

January 11, 2008

134743

PEOPLE OF THE STATE OF MICHIGAN,
　　　　Plaintiff-Appellee,

v

ALEX DAMON SCOTT,
　　　　Defendant-Appellant.
_____/

Clifford W. Taylor,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman,
Justices

SC:　134743
COA:　278158
Wayne CC:　87-004399-01

　　　　On order of the Court, the application for leave to appeal the July 19, 2007 order of the Court of Appeals is considered, and it is DENIED, because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D).  See *People v Hill*, 267 Mich App 345 (2005), lv den 474 Mich 1069 (2006).

　　　　KELLY, J., dissents and states as follows:

　　　　I would grant leave to appeal.  In 1987, defendant pleaded guilty of second-degree murder and possession of a firearm during the commission of a felony.  He was sentenced to life in prison with the possibility of parole for the murder conviction and a consecutive two-year term for the felony-firearm conviction.  Nineteen years later, defendant filed a motion for relief from judgment.  He argues that his plea was invalid because he made it under a misunderstanding of the consequences of a parolable life sentence.  He also argues that he has a liberty interest in parole and that the current Michigan Parole Board's "life means life" policy violates the Ex Post Facto Clause of the United States Constitution.[1]  The trial court denied the motion, and the Court of Appeals denied defendant's application for leave to appeal.

　　　　Defendant's argument implicates the 2007 decision of Judge Marianne O. Battani of the Federal District Court for the Eastern District of Michigan in *Foster-Bey v Rubitschun*.[2]  Judge Battani held that changes made to Michigan's parole law and policies

---

[1] US Const, art I, § 10, cl 1.

[2] *Foster-Bey v Rubitschun,* unpublished opinion of the Federal District Court for the Eastern District of Michigan, issued October 23, 2007 (Docket No. 05-71318).

in 1992 and 1999 violate the Ex Post Facto Clause of the United States Constitution when retrospectively applied to prisoners like defendant.[3]

The 1992 changes included a statutory reduction in the frequency of parole interviews for lifers.[4] Previously, interviews were required in the fourth year of imprisonment and every two years thereafter. The schedule was changed to require the initial interview only after 10 years of imprisonment and every five years thereafter.[5] The 1992 changes increased the size of the parole board and permitted the victims of crimes to appeal from a grant of parole.[6]

Under the 1999 changes, the requirement for an interview every fifth year after the initial 10-year period was eliminated.[7] A file or paper review was deemed sufficient.[8] The 1999 changes also included a limitation on appeals of parole decisions to state courts. Appeals were allowed only by the prosecutor or the victim.[9] Finally, under the 1999 changes, when the parole board elects not to provide a public hearing to a convict

---

[3] The class of prisoners like defendant was stipulated to include:

> [a]ll parolable lifers in the custody of the Michigan Department of Corrections who committed crimes (for which they received a parolable life sentence) before October 1, 1992, and whose parole the "new" parole board has denied, passed over, expressed no interest in pursuing, or otherwise rejected or deferred. Excluded from this definition are so-called "drug lifers" who were convicted of distribution or possession of controlled substances, regardless of whether the crime was originally one subject to parolable life or one converted to parolable life at a later time. For purposes of this class definition, the "new" parole board refers to the board that came into existence pursuant to the 1992 statutory changes in parole, and that gradually took over from the old board in the period from c. 1992 to 1994. As before, if further refinement of the class definition is needed, including the creation of sub-classes, that issue will be addressed when and if the parties raise it. [*Id*. at 3, quoting stipulation and order of class certification.]

[4] See 1992 PA 181.

[5] *Foster-Bey, supra* at 6-7.

[6] *Id*. at 7.

[7] See 1999 PA 191.

[8] *Foster-Bey, supra* at 7.

[9] *Id*.

serving a life sentence, it is not considered a "decision" of the board. This exempts the board from the statutory requirement to provide written reasons for the "denial."[10]

Retroactive changes in a law governing the parole of prisoners may violate the Ex Post Facto Clause if they increase the punishment for a crime after its commission.[11] To determine if a violation has occurred, courts must determine if the changes have created "'a sufficient risk of increasing the measure of punishment attached to the covered crimes.'"[12] Parole decisions in Michigan are discretionary.[13] In *Garner*,[14] the United States Supreme Court explained that

> where parole is concerned discretion, by its very definition, is subject to changes in the manner in which it is informed and then exercised. The idea of discretion is that it has the capacity, and the obligation, to change and adapt based on experience. New insights into the accuracy of predictions about the offense and the risk of recidivism consequent upon the offender's release, along with a complex of other factors, will inform parole decisions.

However, given the 1992 and 1999 changes to Michigan's parole law and policies, the parole board appears to have effectively abdicated exercise of the discretion bestowed on it by statute. The parole board's apparent abdication of its discretionary authority is arguably exemplified by its admission that it believes the imposition of a life sentence means a prisoner will serve life in prison.[15] Moreover, there is evidence that is neither attenuated nor speculative that prisoners like defendant serve a longer sentence as a result of the parole board's new "life means life" policy. There is also evidence that the changes have resulted in a decreased parole rate.[16]

In *Shabazz v Gabry*,[17] the Sixth Circuit Court of Appeals held that the 1992 changes to Michigan's parole system did not violate the Ex Post Facto Clause. In doing so, the court rejected the district court's contrary holding with regard to two subclasses of prisoners. The Sixth Circuit found the district court's analysis unpersuasive because it

---

[10] *Id*.

[11] *Garner v Jones*, 529 US 244, 249-250 (2000).

[12] *Id*. at 250, quoting *California Dep't of Corrections v Morales*, 514 US 499, 509 (1995).

[13] MCL 791.233(1)(a); MCL 791.234(11).

[14] *Garner*, *supra* at 253.

[15] *Foster-Bey*, *supra* at 20.

[16] *Id*. at 34-42.

[17] *Shabazz v Gabry,* 123 F3d 909 (1997).

rested on anecdotal observations and personal speculation about the risk of increased punishment.[18]

In *Foster-Bey*, Judge Battani carefully evaluated substantial evidence, including deposition testimony and statistics not available in *Shabazz*. That evidence indicates that the implementation of the 1992 and 1999 changes to Michigan's parole law and policies has resulted in longer periods of incarceration for parolable lifers.[19] In her well-supported opinion, Judge Battani concludes that the cumulative effect of the 1992 and 1999 changes violated the constitutional rights of a class of prisoners of which defendant is a member. She held:[20]

> The change in the make-up of the Michigan Parole Board, the Board's understanding of why the change occurred and how it was to exercise its discretion, its redefining of the eligibility procedure for nonmandatory lifers, and changes to the timing and intervals of the interview and review process, when considered in total have significantly disadvantaged the class and constitute a violation of the *Ex Post Facto* Clause.

Judge Battani's opinion raises significant concerns about the constitutionality of this state's parole system for those sentenced to parolable life terms before 1992. The Court should grant leave to appeal to consider this jurisprudentially significant issue.

CAVANAGH, J., joins the statement of KELLY, J.

---

[18] *Id*. at 914-915.

[19] Judge Battani explains the flaws in the analysis used by the Court of Appeals in *People v Hill*, 267 Mich App 345 (2005). *Foster-Bey*, *supra* at 36-37.

[20] *Id.* at 42.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

January 11, 2008

*Corbin R. Davis*
Clerk

s0108